HAROLD P. WATTS AND WIFE, JANICE B. WATTS, v.
PAMA MANUFACTURING COMPANY.

(Filed 11 April, 1962.)

**1. Negligence § 1;　Nuisance § 1—**

Nuisance and negligence are distinct torts, and while the same act or omission may constitute negligence and a private nuisance *per accidens*, a nuisance *per accidens* may be created or maintained without negligence.

**2. Nuisance § 2—**

If the operation of facilities on the lands of one person is unreasonable under the circumstances of the particular case and the noise and vibration attendant such operation cause substantial damage in interfering with the use and enjoyment of the lands of another, such operation constitutes a nuisance *per accidens* as an intentional non-trespassory invasion of the rights of the other, regardless of the absence of negligence or the degree of care exercised to avoid injury.

**3. Same—**

An unintentional interference with the use and enjoyment of the lands of another constitutes a nuisance *per accidens* if the conduct resulting in such interference is negligent, reckless or ultrahazardous.

**4. Same—**

The operation of a lawful enterprise is not a private nuisance as a matter of law.

**5. Same—Determination of whether operation of lawful business constitutes nuisance per accidens.**

Whether noise and vibration incident to the normal operation of defendant's lawful business constitutes a nuisance *per accidens* in intentionally interfering with plaintiffs' use and enjoyment of their lands depends upon whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider defendant's operations reasonable under the facts of the particular case, considering the character of the neighborhood, the nature, utility and social value of defendant's operation, the nature, utility, and social value of plaintiffs' use and enjoyment which have been invaded, the suitability of the locality for defendant's operation, the suitability of the locality for the use plaintiffs make of their property, the nature, extent and frequency of the harm to plaintiffs' interests, priority of occupation as between the parties, and other considerations arising upon the evidence.

**6. Same—**

In order for plaintiffs to be entitled to recover for a nuisance *per accidens* occasioned by noise and vibration incident to the operation of a lawful business by defendant, plaintiffs must sustain substantial damage and not injuries amounting to mere inconvenience or annoyance, since if there is no damage there can be no nuisance.

**7. Same— Evidence held sufficient to be submitted to the jury in action to recover for nuisance per accidens.**

Plaintiffs' evidence to the effect that they owned and resided in a house some forty feet from defendant's textile plant, that no interference in the use and enjoyment of their property was experienced before defendant re-equipped the plant and installed much heavier machinery and new air-conditioning equipment, but that thereafter the noise from the plant greatly disturbed plaintiffs in their home, and the vibrations emanating from the machinery shook the house, causing its foundations on the side next to the mill to sink, the walls to crack and come out of line, the moulding to pull away from the walls, dishes to clatter, etc. *is held* sufficient to withstand defendant's motion for nonsuit in this action to recover for a nuisance *per accidens*.

**8. Appeal and Error § 20—**

A defendant may not complain on his appeal that the lower court placed the burden on plaintiff to prove as a part of his cause of action an unnecessary and irrelevant element.

**9. Nuisance § 2—**

In this action to recover for an intentional nontrespassory invasion

of the use and enjoyment of plaintiffs' land, a charge which fails to instruct the jury as to what matters were to be considered in determining whether defendant's operations were unreasonable, must be held for prejudicial error.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *McConnell, S.J.*, September 1961 Civil Term of GASTON.

This is an action to recover damages for injury to property allegedly caused by a private nuisance *per accidens.*

The complaint is summarized as follows:

Plaintiffs own a house and lot on Rankin Lake Road in Gaston County. They have occupied the house as a home at all times since its construction in 1957. It is located a short distance from defendant's textile plant. In 1960 defendant re-equipped the plant and installed much heavier machinery and new air-conditioning equipment. The new machinery and air-conditioner are in almost continuous operation each week, and the noise and vibration from the operation have caused great damage and loss of value to plaintiffs' property. The house vibrates and shakes and will eventually be completely destroyed. Plaintiffs demanded that defendant cease the injurious operation, but defendant refused. Plaintiffs have been damaged in the sum of $8500.

Plaintiffs do not seek injunctive relief.

Defendant, answering, denies the material allegations of the complaint.

Plaintiffs' evidence tends to show:

The manufacturing plant was constructed more than 20 years ago. Until 1959 it was used for the manufacture of hosiery and was known as Wisteria Hosiery Mill. Defendant took over in the late summer of 1959 and converted it to the manufacture of greige goods. New machinery, three times as large and heavy as that formerly used, was installed. A new unit was attached to the air-conditioning tower. There are no other manufacturing plants on the Rankin Lake Road. Plaintiffs are uncertain whether the plant is in an industrial zone or not. There are other dwellings nearby; the nearest is about 100 feet farther from the plant than plaintiffs' house. Plaintiffs' house was built in 1957. It is a one-story frame building and has three rooms, a bath, and a back porch. At the nearest point it is 42 feet from defendant's plant and 45 feet from the air-conditioning tower. Prior to the operation by defendant of the new machinery and equipment plaintiffs suffered no annoyance and no injury to their property. After defendant began operating the heavy machinery and new air-conditioning

equipment the noise greatly disturbed plaintiffs and their house began to vibrate and shake. The mill was in operation almost constantly, beginning at 11:00 o'clock P.M. Sunday night and continuing for 6 or 6 1/2 days each week. Occupants of the house could feel movement and vibration. The television antenna bounced; ash trays and dishes clattered and moved; bottles and other articles moved and fell off the commode in the bath room; water leaked around the commode. Windows and doors were kept closed in all seasons to reduce noise so that occupants might converse on the telephone and sleep at night. Moulding pulled away from the walls; hardwood floors became uneven and opened; walls were out of line and developed cracks as wide as a finger; doors rattled. The roof pulled away from the chimney and water came in and stained the walls. The roof had to be repaired. The foundation sank about two inches on the side next to the mill and about one inch on the front. Additional pillars were placed under the house for support. Protests to defendant's foreman were ignored. The amount of damage ranges from $2000 to $3500.

Defendant offered no evidence. Plaintiffs elected to ask for permanent damages.

Issues were submitted to and answered by the jury as follows:

"1. Are the plaintiffs owners of the property described in the Complaint? Answer: Yes.

"2. Did the defendant, Pama Manufacturing Company, maintain and operate its mill referred to in the Complaint so as to create a nuisance as alleged, to the time of the trial? Answer: Yes.

"3. If so, did the nuisance created and maintained by the defendant cause damage to the plaintiffs' property? Answer: Yes.

"4. What amount of permanent damages, if any, are the plaintiffs entitled to recover of the defendant? Answer: $1200.00."

Judgment was entered in accordance with the verdict.

Defendant appeals.

*Mullen, Holland & Cooke and Robert E. Gaines for plaintiffs.*
*Hollowell & Stott for defendant.*

MOORE, J. Defendant first assigns as error the denial of its motion for nonsuit. The gist of its argument on this assignment is that there is no evidence that defendant "operated in such a way to occasion more noise and vibration than necessarily results from operation of other plants of like nature and character." It calls attention to the undisputed testimony of the male plaintiff and his father, on cross-examination, that they had worked at a knitting mill, the Beaunit

Mill in Lowell, Gaston County, and that the machines used and the manner of operating were similar to those of defendant.

Defendant cites *Mewborn v. Rudisill Mine, Inc.,* 211 N.C. 544, 191 S.E. 28, as authority for its position. In that case plaintiffs sued, on the theory of private nuisance *per accidens,* to recover damages for injuries to persons and property resulting from noises, vibrations and glaring lights occasioned by the operation of a gold mine. Plaintiffs also asked for injunction to abate the nuisance. While it does not appear in the opinion, the record on file in this Court shows that plaintiffs alleged, among other things, that defendant applied and exploded unnecessarily large loads of dynamite, used an unnecessarily large bell, and there were noises, vibrations and lights not necessary to the operation of the mine. The record also shows that defendant averred that the ore was being extracted "under the most approved methods," and offered evidence tending to show its operation met the safety requirements of the Department of Labor, was modern and in accordance with approved methods, was the same as in other comparable gold mines and in keeping with good mining practice. The jury found that the operation did not constitute a nuisance, and there was judgment for defendant. The trial judge charged the jury, in part, that "the operation of a mine must occasion more noise and vibration than necessarily results from the operation of other plants of like kind and character, operated as a reasonably prudent man or miner would operate them under like circumstances, in order to constitute such operation a nuisance." The judgment was affirmed on appeal. The foregoing portion of the charge was not specifically in question and was not discussed in the opinion. The question raised and discussed was whether the judge should have charged, and did sufficiently charge, that the location of the mine and its operation at night were matters to be considered by the jury on the nuisance issue; and it was held that the judge "did, in effect, so instruct the jury." The charge covered many principles not stated in the above excerpt, and other tests were also imposed for the guidance of the jury. The opinion states generally that, considering the charge as a whole, there was no error in the instructions on the nuisance issue, but there is no indication that this Court intended to adopt the portion of the charge quoted above as a general criterion for determining whether or not the operation of a lawful enterprise is a nuisance *per accidens.* In the *Mewborn* case it is obvious that the action, in a substantial degree, involved an alleged nuisance based on *negligent* operation. The excerpt from the charge quoted above, and relied on by defendant, might, under apposite pleadings and in limited circumstances, be a determinative test where the alleged nuisance involves *negligent* oper-

ation. But the instant action is not based on negligent operation of the mill. Plaintiffs allege intentional conduct amounting to a nuisance *per accidens* by reason of *unreasonable* operation. The language relied on by defendant is not a decisive test in the case at bar.

Negligence and nuisance are distinct fields of tort liability. The same act or omission may constitute negligence and also may give rise to a private nuisance *per accidens*, and thus the two torts may coexist and be practically inseparable. But a private nuisance *per accidens* may be created or maintained without negligence. Indeed, most private nuisances *per accidens* are created or maintained, and are redressed by the courts without allegation or proof of negligence. A person is subject to liability for an intentional non-trespassory invasion of an interest in the use and enjoyment of land when his conduct is *unreasonable* under the circumstances of the particular case; a person is subject to liability for an unintentional invasion when his conduct is negligent, reckless or ultrahazardous. An invasion of another's interest in the use and enjoyment of land is intentional in the law of private nuisance when the person, whose conduct is in question as a basis of liability, acts for the purpose of causing it, or knows that it is resulting from his conduct, or knows that it is substantially certain to result from his conduct. A person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury. *Morgan v. Oil Co.*, 238 N.C. 185, 77 S.E. 2d 682; *Andrews v. Andrews*, 242 N.C. 382, 88 S.E. 2d 88.

In *negligence* actions the common usage in a business, as to installations, equipment, and manner of operation, is a proper matter for consideration in determining whether or not reasonable care has been exercised in a particular case, but it does not furnish a test which is conclusive or controlling, and negligence may exist notwithstanding the means and methods adopted are in accordance with those customary in the business. 65 C.J.S., Negligence, s. 16, p. 404; *Grant v. Bottling Co.*, 176 N.C. 256, 97 S.E. 27. Negligence is not a factor in the instant case according to the pleadings and evidence; plaintiffs allege intentional conduct amounting to private nuisance *per accidens*. Whether the use of property to carry on a lawful business, creating noise and causing vibrations, amounts to a nuisance depends upon the facts and circumstances of each particular case. *Clinic & Hospital v. McConnell*, 236 S.W. 2d 384 (Mo. 1951). The question is whether or not the use is unreasonable. "Negligence, wrong business methods, improper appliances, and the like may bear upon, but do not control, the question of reasonable use." *McCarty v. Natural Carbonic Gas Co.*, 81 N.E. 549 (N.Y. 1907).

"The law of private nuisance rests on the concept embodied in the ancient legal maxim *Sic utere tuo ut alienum non laedas,* meaning, in essence, that every person should so use his own property as not to injure that of another." *Morgan v. Oil Co., supra.*

The operation of a lawful enterprise is not a private nuisance *per se, i.e.,* as a matter of law. *State v. Brown,* 250 N.C. 54, 108 S.E. 2d 74; *Causby v. Oil Co.,* 244 N.C. 235, 93 S.E. 2d 79; *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396; *Pake v. Morris,* 230 N.C. 424, 53 S.E. 2d 300. And the fact that a lawful enterprise produces noise and causes vibrations does not render it a private nuisance *per se.* But noise and vibrations emanating from the operation of a lawful enterprise may constitute it a private nuisance *per accidens, i.e.,* in fact. 39 Am. Jur., Nuisances, ss. 48 and 52, pp. 333 and 335; *Freidman v. Keil,* 166 A. 194 (N.J. 1933); *Cunningham v. Wilmington Ice Mfg. Co.,* 121 A. 654 (Del. 1923); *Meyer v. Kemper Ice Co.,* 158 S. 378 (La. 1935).

Intentional private nuisances *per accidens* are those which become nuisances by reason of their location, or by reason of the manner in which they are constructed, maintained or operated. *Morgan v. Oil Co., supra.* It is the *unreasonable* operation and maintenance that produces the nuisance. *King v. Ward,* 207 N.C. 782, 178 S.E. 577. And for liability to exist there must be a *substantial* non-trespassory invasion of another's interest in the private use and enjoyment of property. *Morgan v. Oil Co., supra.* "It must affect the health, comfort or property of those who live near. It must work some substantial annoyance, some material physical discomfort to the plaintiffs, or injury to their health or property." *Pake v. Morris, supra; Duffy v. Meadows,* 131 N.C. 31, 42 S.E. 460.

"The precise limits of one's right to do as he pleases with his own property are difficult to define. The use must be a reasonable one, and the right implies and is subject to a like right in every other person. One cannot use his property so as to cause a physical invasion of another person's property, or unreasonably to deprive him of the lawful use and enjoyment of the same, or so as to create a nuisance to adjoining property owners . . . and any unreasonable . . . use which produces material injury or great annoyance to others, or unreasonably interferes with their lawful use and enjoyment of their property, is a nuisance which . . . will render him liable for the consequent damage." 39 Am. Jur., Nuisances, s. 16, pp. 297, 298.

"The jarring of a person's premises, or the causing of vibration therein, may be a nuisance under some circumstances. However, vibration from proper acts done in an appropriate locality is not necessarily a nuisance, entitling an adjoining property owner to relief, but, if the vibration is excessive and unreasonable, producing actual physi-

cal discomfort and annoyance to persons of ordinary sensibilities, it may be a nuisance. Vibrations in order to give rise to damages must be such as interfere with a substantial right." 66 C.J.S., Nuisances, s. 21, p. 772. The same general rule applies with respect to noise. *ibid.* s. 22, pp. 772-774.

In the case at bar it is not controverted that plaintiffs are the owners of the house and lot referred to in the complaint, nor that defendant's knitting mill is a lawful enterprise. In order for plaintiffs to make out a *prima facie* case, on the second or nuisance issue, they must present evidence tending to show: (1) that the operation of the mill by defendant produced *unreasonable* noise and vibration under the circumstances existing, and (2) that because of such unreasonable noise and vibration there was *substantial* injury and loss of value to plaintiffs' house and lot.

The mere fact that an invasion of another's interest in the use and enjoyment of land is intentional does not mean that it is unreasonable. Fundamentally, the unreasonableness of intentional invasion is a problem of relative values to be determined by the jury in the light of the circumstances of the case. The question is not whether a reasonable person in plaintiffs' or defendant's position would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. Regard must be had not only for the interests of the person harmed but also for the interests of the defendant, and for the interests of the community. Restatement of the Law of Torts, Vol. 4, s. 826, Comments a. and b., pp. 241, 242. What is reasonable in one locality and in one set of circumstances may be unreasonable in another. The circumstances which are to be considered by the jury in determining whether or not defendant's conduct is unreasonable include: the surroundings and conditions under which defendant's conduct is maintained, the character of the neighborhood, the nature, utility and social value of defendant's operation, the nature, utility and social value of plaintiffs' use and enjoyment which have been invaded, the suitability of the locality for defendant's operation, the suitability of the locality for the use plaintiffs make of their property, the extent, nature and frequency of the harm to plaintiffs' interest, priority of occupation as between the parties, and other considerations arising upon the evidence. No single factor is decisive; all the circumstances in the particular case must be considered. *McCarty v. Natural Carbonic Gas Co., supra; Clinic & Hospital v. McConnell, supra.*

". . . (A)ccording to the weight of authority, the fact that a person voluntarily comes to a nuisance by moving into the sphere of its in-

jurious effect, or by purchasing adjoining property or erecting a residence or building in the vicinity after the nuisance is created, does not prevent him from recovering damages for injuries sustained therefrom, . . . especially where, by reason of changes in the structure or business complained of, the annoyance has since been increased. . . . But while priority of occupation is not conclusive as to the existence of a nuisance, it is to be considered with all the evidence, and the inference drawn from all the facts proved, in determining whether the use of the property is unreasonable." 39 Am. Jur., Nuisances, s. 197, pp. 472, 473.

Before plaintiffs may recover the injury to them must be substantial. By substantial invasion is meant an invasion that involves more than slight inconvenience or petty annoyance. The law does not concern itself with trifles. Practically all human activities, unless carried on in a wilderness, interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms. Each individual in a community must put up with a certain amount of annoyance, inconvenience or interference, and must take a certain amount of risk in order that all may get on together. But if one makes an unreasonable use of his property and thereby causes another substantial harm in the use and enjoyment of his, the former is liable for the injury inflicted. Restatement of the Law of Torts, Vol. 4, s. 822, Comments g. and j., pp. 229 and 231.

In the light of the foregoing pertinent legal principles, we are of the opinion that plaintiffs' evidence is sufficient to withstand defendant's motion for nonsuit. Since there must be a new trial we refrain from a further analysis and discussion of the evidence.

The court's general legal instructions on the second issue are taken almost *verbatim* from, and include all that portion of the charge set out in, the opinion in *Mewborn v. Rudisill Mine, Inc., supra.* In summary and as the final instruction on the second issue the judge stated: ". . . (I)f the jury shall find from the evidence and by its greater weight, the burden being upon the plaintiff, that the maintenance and operation of the defendant's mill occasioned more noise and vibration than necessarily resulted from a reasonable operation of other plants of like kind and character, and that such noise and vibration were excessive or unreasonable in degrees, or of such character to produce physical discomfort and injury to the property of the plaintiff, which could have been avoided but for such excessive or unreasonable operation, as I have defined them, and as alleged in the Complaint, then, Gentlemen of the Jury, the court instructs you that if you find all of this by the greater weight of the evidence, that that would

amount to a nuisance, and it would be your duty to answer the second issue 'Yes.' If you fail to so find by the greater weight of the evidence, it will be equally your duty to answer the second issue 'no.' " Thus, to be entitled to a favorable verdict, plaintiffs were required to meet two tests: (1) To show that defendant's operation occasioned more noise and vibration than necessarily resulted from a reasonable operation of other plants of like character, and (2) that the noise and vibration caused by defendant's operation were unreasonable in degree. The first test has no relation to the allegations of the complaint or the evidence. That an unnecessary and irrelevant burden was placed on plaintiffs is a matter of which defendant may not complain. This is especially true since defendant has contended that the first test was applicable. But the prejudicial feature of the instruction, as to defendant, is the failure of the court, anywhere in the charge, to give the jury rules or directions for determining unreasonableness of operation, that is, what matters were to be considered in making the determination in a case such as the one at bar. Since we have already discussed this phase of the law above, no further statement is necessary here.

In passing, we think the submission of the third issue was confusing. It is necessarily embraced in the second issue. If there is no damage to plaintiffs, there is no nuisance; and the damage must be substantial. However, there was no exception to the submission of the issue.

For the reason stated there must be a

New trial.

SHARP, J., took no part in the consideration or decision of this case.