IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-416

Filed 5 November 2024

Watauga County, No. 21 CVS 180

DAVID BRADFORD FARRINGTON
and MARGARET ELIZABETH
FARRINGTON, Plaintiffs,

v.

WV INVESTMENTS, LLC, Defendant.

Appeal by WV Investments, LLC from judgment entered 7 October 2022 by

Judge Kimberly Y. Best in Watauga County Superior Court. Heard in the Court of

Appeals 17 October 2023.

> *Moffatt & Moffatt, PLLC, by Attorneys Tyler R. Moffat and Joseph T. Petrack, for the plaintiffs-appellants.*

> *Poyner-Spruill, LLP, by Attorneys N. Cosmo Zinkow and Andrew H. Erteschik, for the defendant-appellant.*

STADING, Judge.

## I. Background

This case involves a combination of property and tort claims between David

Bradford Farrington and Margaret Elizabeth Farrington ("Plaintiffs"), and WV

Investments, LLC ("Defendant"). Plaintiffs own their family residence at 600 Grand

Boulevard ("600 Property"), in the Town of Boone. On the adjacent parcel at 610

Grand Boulevard ("610 Property"), Defendant administers and rents out a small apartment complex through its constituent member-managers, David J. Welsh and Jeffrey J. Vanacore. The complex is a single building that houses four, separate, two-bedroom, dwelling units primarily occupied by Appalachian State University students.

## A. Facts

In 2015, the original owner of the 600 and 610 Properties conveyed half of the then-single parcel to Defendant. Along the rear property line, the owner retained an exclusive access easement ("Access Easement") along part of the 600 Property driveway and a 610 Property-exclusive parking easement ("Parking Easement") onto the portion of the 610 Property adjacent to the Access Easement. Around March 2010, Defendant conveyed the 600 Property to Plaintiffs and recorded the Access and Parking Easements. The 610 Property owners and their assigns could use the Parking Easement subject to the rules and regulations specified in Defendant's standard lease contract (the "Lease Contract) offered to all tenants.

The Lease Contract bound the tenants and Defendant, as landlord, to certain contractual rights and obligations relevant here. The Lease Contract's rules and regulations provision expressly incorporates the following tenant requirements enforceable by Defendant:

> (14) **PARKING**: Please use only the number of spaces assigned to you. . . . Park in marked spaces only. Policies are enforced 24 hours a day. Parking Policies are strictly

enforced in order to assure you of the number of spaces assigned you on your Lease Contract.

You agree to abide by parking policies, rules, signs and regulations that apply to your dwelling's parking lot(s). **There will be no exceptions to parking policies and signs, so please do not request an exception.**

. . .

(38) **TENANT'S OBLIGATIONS**: The tenant shall not violate any local ordinance in or about the dwelling unit, and shall not commit or permit any waste or nuisance, disturbance, annoyance, inconvenience, or damage . . . to the occupancy of any adjoining house and/or apartment, or the neighborhood.

Both properties are in one of the Town of Boone's "Neighborhood Conservation Districts" subject to the Unified Development Ordinance ("UDO"). The UDO states: "All tenants of rental property must complete and file a Residential Parking Registration Form with the Administrator . . . [to be] issued parking stickers" by the Town Administrator. Boone, N.C., Unif'd Dev. Ordinance art. 14, § 14.41.03(A)–(B) (2024).

Soon after Plaintiffs moved into the 600 Property, the 610 Property tenants began regularly throwing loud parties, blocking the Access Easement, and crossing over the Parking Easement to leave the property. In 2015, Defendant boarded its first set of tenants independent of the previous owner. At Plaintiffs' repeated requests, Welsh emailed the then-tenants over the years to remind them that "the only place [they] are allowed to park is in [their] [own] parking spot," and that they

can never "leave cars in the shared driveway" between the Properties. Despite several similar communications from 2015 to 2020, the tenants continued disregarding these instructions. The Town of Boone notified Mr. Farrington that it issued only eighteen parking stickers to the 610 Property tenants over that period, thirteen of which were issued in 2019.

## B. Procedural Posture

On 14 April 2021, Plaintiffs filed a complaint against Defendant, alleging that it committed multiple instances of common-law trespass, common-law nuisance, and negligence through a chronic lack of tenant management. The complaint also sought an order to permanently enjoin Defendant from allowing the 610 Property tenants to park or trespass on the 600 Property without valid Town of Boone parking stickers. Defendant denied all claims. On 13 June 2022, the trial court conducted a bench trial in which the parties offered competing evidence.

After ruling for and against each party on various claims, the trial court entered an order ("Order"), documenting its findings of fact and conclusions of law. The trial court found Defendant negligent in his duties owed to Plaintiffs as the landlord of the adjacent 610 Property. It also awarded $65,000 in damages to Plaintiffs through a "written payment plan" and enjoined Defendant in several respects described below. The trial court rejected the trespass and nuisance claims, reasoning that Plaintiffs failed to adduce "sufficient evidence to hold" Defendant liable for either tort. Plaintiffs and Defendant timely appealed and cross-appealed

several aspects of the Order.

## 1. *Findings of Fact*

Finding No. 6 stated in part: "[t]he testimony revealed that . . . a maximum of six (6) vehicles at a time can park in that area and still have room to turn around . . . without trespassing on the [600] [P]roperty." Findings No. 10 and No. 12, respectively, stated that when the vehicle limit is exceeded, it becomes "virtually impossible for vehicles to safely access the rear of the [610] [P]roperty . . . without trespassing across the [ ] Parking Easement" (Finding No. 10), and that, under these conditions, they "encroach" onto the 600 Property via "ingress, egress, and regress" from the 610 Property (Finding No. 12).

The trial court also found that "[P]laintiffs have repeatedly requested" Defendant to require its tenants to obtain parking stickers from the Town of Boone, as required by its ordinances (Finding No. 14), to "limit the number and use of vehicles . . . and prohibit Defendant's tenants from crossing and trespassing across the [ ] Parking Easement" (Finding No. 15), and to "manage parking on the [610] [P]roperty" (Finding No. 19). These findings charged Defendant with failing to fulfill Plaintiffs' requests, with Finding No. 14 specifying that Defendant "[d]id not comply with the Town of Boone ordinances in a consistent manner and recently only [complied] after this lawsuit was filed." Another finding clarified that Defendant "has historically failed to ensure that its tenants comply with Town of Boone Ordinances" (Finding No. 19). Finally, the trial court incorporated section fourteen of the rules

and regulations regarding the tenants' parking requirements as Finding No. 16.

## 2. *Conclusions of Law*

In relevant part, the trial court enjoined Defendant "from issuing more parking stickers than spaces [the 610] [P]roperty permits," to "inform its tenants that all of tenant's vehicles will require a Town of Boone parking sticker," and to "take such action as is necessary to prevent its tenants from trespassing upon and damaging" the 600 Property. The trial court also ordered Defendant to pay Plaintiffs $65,000 in damages for its negligence in accordance "with a written payment plan agreed upon by the parties."

## II. Jurisdiction

This Court has jurisdiction to review the Order pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2023) ("any final judgment of a superior court").

## III. Analysis

On appeal, both Plaintiffs and Defendant raise their own issues with the Order. Plaintiffs argue that the trial court erred in: (1) concluding that they did not adduce sufficient evidence to hold Defendant liable for trespass; (2) concluding that they did not adduce sufficient evidence to categorize Defendant's property as a nuisance to the 600 Property; and (3) fashioning injunctive relief applicable to their actual injuries caused by Defendant.

As a cross-appellant, Defendant argues that the trial court erred in: (1) relying on incompetent evidence to reach specific erroneous findings of fact; (2) concluding

that Defendant owed Plaintiffs a legally cognizable $65,000 in damages; and (3) issuing an injunction with unenforceable, vague commands.

For the reasons discussed below, we hold that the trial court: (1) did not err in reaching the contested findings of fact; (2) did err in concluding that Defendant owed Plaintiff $65,000 in damages without further documentation; and (3) did err by issuing an injunction too imprecise to enforce.

## A. Common Law Charges

Plaintiffs argue that the trial court erred in concluding that they failed to adduce sufficient evidence to hold Defendant liable for either trespass or nuisance at common law. In support of their trespass claim, Plaintiffs suggest that Defendant's continued rent collections throughout the alleged trespass period gave rise to vicarious liability from the tenants' encroachments. As for their nuisance claim, Plaintiffs point to Defendant's "willful and persistent refusal" to adequately control its tenants. We disagree and hold that the trial court did not err in reaching either conclusion.

### 1. Trespass

A plaintiff must prove three elements to establish a claim for real-property trespass: "(1) that the defendant caused actual damage to the plaintiff, (2) by entering the plaintiff's real property without authorization, (3) which the plaintiff contemporaneously possessed at the time of the alleged trespass." *Keyzer v. Amerlink, Ltd.*, 173 N.C. App. 284, 289, 618 S.E.2d 768, 772 (2005) (citation omitted).

Additionally, a defendant may incur third-party liability through an agent's actions or by the conduct of co-conspirators. *See, e.g.*, *Horton v. Hensley*, 23 N.C. 163 (1840) (addressing co-conspirators as principals); *McBryde v. Coggins-McIntosh Lumber Co.*, 246 N.C. 415, 98 S.E.2d 663 (1957) (dealing with agents and principals).

A principal can be liable for an agent's unauthorized actions if evidence shows the principal ratified those actions after the fact. As the court stated, a principal is liable when subsequent conduct "reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 229, 721 S.E.2d 256, 262 (2012). However, Plaintiffs' assertion that the 610 Property tenants are agents of Defendant is flawed.

Plaintiffs' trespass claim fails because it seeks to apply general principles of agent-principal liability to a landlord-tenant relationship where they do not belong. To accept such an argument would indeed "break new ground." *Cf.* N.C. Gen. Stat. § 42-1 (2023) ("No lessor of property, *merely by reason that he is to receive as rent . . . shall be held a partner of the lessee.*" (emphasis added)).

Defendant acknowledges that Plaintiffs have legal possession of the 600 Property. Furthermore, Defendant leaves its tenants' regular encroachments onto the 600 Property and Parking Easement unchallenged, which caused actual damage. Yet Plaintiffs' argument suffers from a crucial deficiency: they do not allege that Welsh, Vanacore, or any other agent of Defendant personally trespassed onto the 600 Property or its easements. In fact, Plaintiffs explicitly admit that the alleged

trespasses were "not by the Defendant but instead by the tenants and guests of [the] 610" Property.

Plaintiffs' position is undermined by evidence of emails from Welsh instructing Defendant's tenants "not to park in the Access Easement." Even assuming a vicarious landlord-tenant relationship, Defendant's documented refusal to "ratify the [tenants'] unauthorized acts" effectively severs any possible link to third-party trespass liability. *Carter*, 218 N.C. App. at 229, 721 S.E.2d at 262. We thus hold that the trial court did not err in determining that Plaintiffs failed to present sufficient evidence to support a common-law trespass claim as a matter of law.

## 2. *Nuisance*

Second, Plaintiffs argue that the trial court erred in concluding that they failed to adduce sufficient evidence to hold Defendant liable for common law nuisance. Plaintiffs point to Defendant's "willful and persistent refusal" to control its adequately tenants. We disagree because the constituent nuisances alleged here appropriately fall within the trial court's otherwise undisturbed holding of negligence by Defendant.

North Carolina distinguishes between negligence and nuisance even though "the line of demarcation between them is often indistinct and difficult to define." *Midgett v. N.C. State Hwy. Comm'n*, 265 N.C. 373, 379, 144 S.E.2d 121, 126 (1965). "[T]he two torts may coexist and be practically inseparable[.]" *Morgan v. High Penn Oil Co.*, 238 N.C. 185, 191, 77 S.E.2d 682, 688 (1953). In order for Plaintiffs to assert

a *prima facie* nuisance claim, they must show: (1) Defendant unreasonably used its property under circumstances that invaded or otherwise interfered with Plaintiffs' use of their property; and (2) Defendant's usage caused "substantial injury and loss of value to" Plaintiffs' property. *Watts v. Pama Mfg. Co.*, 256 N.C. 611, 618, 124 S.E.2d 809, 814 (1962). On the other hand, an alleged nuisance may be "negligence-born" and must thus "make obeisance to its parentage" as a question of law. *Butler v. Carolina Power & Light Co.*, 218 N.C. 116, 121, 10 S.E.2d 603, 606 (1940) (citation omitted). Against the backdrop of these legal principles, we uphold a trial court's judgment "if it is correct upon *any* theory of law." *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 519, 257 S.E.2d 109, 113 (1979) (emphasis added) ("A correct ruling by a trial court will not be set aside merely because the court gives a wrong or insufficient reason for its ruling. . . . The ruling must be upheld if it is correct upon any theory of law."). Put more simply, we leave untouched a legally sound result even if "the court gives a wrong or insufficient reason for its ruling." *Id.*

Here, the trial court reached a legally sound conclusion in characterizing Defendant's repeated failure to adequately control its tenants as negligence without separable nuisance. The trial court found that Defendant's tenants often encroached onto Plaintiffs' property and parked their vehicles without the required Town of Boone parking stickers. The trial court also found that Plaintiffs suffered cognizable damages based on Defendant's actions. The trial court could have rationally determined that these findings amounted to circumstantially "unreasonable"

property interferences that caused "substantial injury" to Plaintiffs. *Watts*, 256 N.C. at 618, 124 S.E.2d at 814. Thus, we hold that the trial court did not err in concluding that Plaintiffs failed to adduce sufficient evidence to hold Defendant liable for common law nuisance independent of its negligence holding.

## B. Negligence

Defendant challenges the trial court's negligence holding by suggesting that incompetent evidence supports specific erroneous findings of fact. Defendant asserts that these findings misapprehend its role in parking-ordinances enforcement and the intra-property navigability of the vehicles themselves. We disturb a finding of fact only if the trial court in question abused its discretion in reaching it, which occurs if the finding is so "manifestly unsupported by reason" or "arbitrary that it could not have been the result of a reasoned decision." *Lacey v. Kirk*, 238 N.C. App. 376, 381, 767 S.E.2d 632, 638 (2014) (citation omitted). By contrast, we review "question[s] of law or legal inference" *de novo*. *Id.* For the reasons discussed below, we hold that competent evidence supports the trial court's findings of fact, which in turn support its conclusions of legal negligence.

### 1. *Findings of Fact*

Defendant bifurcates his factual challenges between those findings that address municipal parking requirements (Findings Nos. 14, 15, 17, and 19) and tenant-vehicle navigability between the properties (Findings Nos. 6, 10, 12, 15, and 19). Neither party challenges any other finding of fact that conclusively bind us here.

*See Durham Hosiery Mill, L.P. v. Morris*, 217 N.C. App. 590, 592, 720 S.E.2d 426, 427 (2011). In reaching decisions, a trial court sitting as a factfinder must "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (citing N.C. Gen. Stat. § 1A-1, Rule 52(a) (2023)). On appeal, we do not assess "the weight and credibility to be given to evidence disclosed by the record on appeal." *Coble,* 300 N.C. at 712–13, 268 S.E.2d at 189 (citations omitted). And if competent evidence supports "sufficient findings of fact," we generally will not reverse a trial court's order "because of other erroneous findings which do not affect the conclusions." *Clark v. Dyer*, 236 N.C. App. 9, 24, 762 S.E.2d 838, 846 (2014) (citation omitted). Because the Order involves municipal parking enforcement by the Town of Boone— not Defendant—and is supported by competent record evidence for its "causation-based findings," any error in reaching Finding No. 14 was harmless. The trial court also did not err in its Findings Nos. 6, 10, 12, 15, 17, and 19.

### a. Municipal Parking Enforcement

Competent evidence supports the trial court's unambiguous findings about the Town of Boone's municipal parking enforcement. If a trial court renders reasonably ambiguous findings or conclusions "in light of all relevant circumstances, the court should adopt the interpretation that is in line with the law applicable to the case." *Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 273, 775 S.E.2d 316, 322 (2015). Relevant circumstances include "the pleadings, issues, [and] the facts of the case."

*Id.* Despite this fact-specific discretion, our case law has long recognized that any "[f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light." *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939); *see also Johnson v. Southern Tire Sales & Serv.,* 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004). The trial court's challenged findings of fact regarding parking enforcement are neither an ambiguous judgment nor a legal misapprehension.

Challenges grounded in ambiguity to the trial court's Findings Nos. 15 and 19 fail outright. By failing to challenge Finding No. 16, Defendant and Plaintiffs affirm Defendant's contractual obligation to enforce the parking policies for the 610 Property parking lot. The Order refers to Defendant's contractual duties to "enforce the Town of Boone's requirements for parking stickers," to "ensure that its tenants comply with Town of Boone Ordinances," and to "manage parking on its property." Even if the term "enforce" is ambiguous, the requirement that tenants "not violate any local ordinance" merits the deference we afford to a trial court's interpretation. *See Faucette*, 242 N.C. App. at 273, 775 S.E.2d at 322 (quoting *Blevins v. Welch*, 137 N.C. App. 98, 102, 527 S.E.2d 667, 670-71 (2000)) ("'Generally, the interpretation of judgments presents a question of law that is fully reviewable on appeal.' However, this Court will afford some degree of deference to the trial court's interpretation of an ambiguous judgment.").

Finding No. 14's second sentence states that Defendant "did not comply with

the Town of Boone ordinances in a consistent manner." Read in isolation, this excerpt might imply some ambiguity as to whether the trial court understood the Town of Boone's "Neighborhood Conservation Districts" ordinance to legally bind Defendant instead of the tenants themselves. But Defendant challenges only this "isolated part[ ]" of a larger "whole," Finding No. 14, which lists more than just Defendant's purported non-compliance. *Faucette*, 242 N.C. App. at 273, 775 S.E.2d at 322 ("Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole."). Finding No. 14 confirms the trial court's understanding that Defendant had "to require its tenants to obtain parking stickers from the Town of Boone, as required by ordinances of the Town."

We also dispense with Defendant's and Plaintiffs' challenge to Finding No. 17 because it lacks any additional support beyond a conclusory reference to the trial court's alleged misapprehension regarding the nature and scope of the Town of Boone's ordinance. "It is not the role of an appellate court to construct arguments for the parties, or to flush out incomplete arguments" and we will not do so here. *Est. of Hurst ex rel. Cherry v. Jones*, 230 N.C. App. 162, 178, 750 S.E.2d 14, 25 (2013). We thus hold that the trial court did not error in reaching Finding No. 14. The trial court also did not err in its Findings Nos. 15, 17, and 19 to the extent they addressed Defendant's arguments about the Town of Boone's municipal parking regulations.

### b. Encroachment Causation

Competent evidence also supports the trial court's findings of fact regarding

proximate causation of the tenants' encroachments onto the 600 Property. A trial court's findings of fact supported by competent evidence bind us on appeal even if they might "support findings to the contrary." *Mann Contractors, Inc. v. Flair With Goldsmith Consultants–II*, 135 N.C. App. 772, 775, 522 S.E.2d 118, 121 (1999). Here, Defendant challenges the trial court's finding that more than six vehicles in the 610 Property parking lot make it "virtually impossible" to exit without trespass by arguing that *any* number of vehicles makes it impossible. We believe that Findings Nos. 6, 10, 12, 15, and 19 reveal, to varying degrees, that Defendant proximately caused Plaintiffs' injuries. Allowing six or fewer cars still permitted tenants to "ingress, egress, and regress from the rear parking area," which Defendant had a duty to reasonably regulate for Plaintiffs' benefit.

To support its position, Defendant argues that statements by Charles Ritter, a former 610 Property tenant who testified that the small driveway size occasionally "forced" them "to go into [Plaintiffs'] property by either removing stakes" or "simply running" them over to leave. Defendant suggests that this testimony demonstrates an inability to prevent tortious conduct, thus establishing an independent cause of Plaintiffs' injuries. However, in the same testimony, Ritter confirmed that the tenants could exit the parking lot and use the easement without trespassing, even "[w]ith the six cars parked there." Given the competing evidence, the trial court could reasonably have determined that the tenants still had the means to "ingress, egress, and regress from the rear parking area" without trespassing onto Plaintiffs' property.

We therefore hold that the trial court did not err in reaching Findings Nos. 6, 10, 12, 15, and 19 to the extent they address Defendant's arguments about the proximate causation of its negligence.

## 2. *Conclusions of Law*

Defendant does not attack the conclusion of legal negligence itself. Yet Defendant compares the trial court's error to *Plymouth Fertilizer Co. v. Selby*, 67 N.C. App. 681, 313 S.E.2d 885 (1984). In *Plymouth*, the trial court inadequately documented its findings, and the Court of Appeals suspended the N.C. Rules of Appellate Procedure "to prevent manifest injustice" despite the injured "defendant [ ] so ignoring [them] as to render th[e] appeal" otherwise dismissible. 67 N.C. App. at 682, 313 S.E.2d at 885 (citing N.C. R. App. P. 2). The *Plymouth* trial court so systematically failed to "resolv[e] critical issues raised by the evidence" in its findings that this Court effectively wrote an order for it. *Id.* at 683, 313 S.E.2d at 885.

Defendant incorrectly pulls from dictum mentioning the *Plymouth* Court's "uncertain[ty] of *any* construction of the evidence that would support the conclusions of law made by" the trial court. *Id.* at 686, 313 S.E.2d at 888 (emphasis added). Here, we are unable to discern any errors that resemble those in present in *Plymouth*. Thus, we hold that the trial court relied on judicially sound findings of fact throughout the Order.

## C. Damages Awarded

Defendant next argues that the trial court erred in holding that Defendant

owed plaintiffs $65,000 in negligence damages because the trial court did not document the underlying calculation in its findings. We agree that this conclusion of law lacks sufficient findings to support it. Contrary to Plaintiffs' response, a reviewable legal conclusion requires more than just transcript evidence indicating how the trial court might have reached its final decision. As mentioned, a trial court's findings "supported by competent evidence" amount to a jury verdict even if other evidence might "support findings to the contrary." *Mann Contractors*, 135 N.C. App. at 775, 522 S.E.2d at 775. But if the record does show contrary evidence, the trial court must "make specific findings upon which [it] base[s] its conclusions" or risk reversible error on appeal. *Id.*; *see* N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2023). The trial court must specify these findings "enough to indicate" to this Court that it "determine[d] what pertinent facts" the evidence "actually established . . . ." *Coble*, 300 N.C. at 713, 268 S.E.2d at 189.

Relying on *Mann Contractors*, Defendant correctly notes that the trial court's failure to show its math within the Order prevents us from adequately reviewing the damages awarded as a question of law. In *Mann Contractors*, this Court remanded the case for a new bench trial on the narrow issue of calculable damages stemming from a contract dispute over home renovations. *Mann Contractors*, 135 N.C. App. at 776, 522 S.E.2d at 121. The *Mann Contractors* defendant appealed an award of $36,000 in damages to plaintiff, arguing that the trial court did not support this amount with any requisite findings of fact. *Id.* at 774, 522 S.E.2d at 120. Our Court

agreed, reasoning that the trial court did not correctly address in its findings "the factual dispute with [ ] respect to either the necessity or cost of" any contrary calculations. *Id.* at 774, 522 S.E.2d at 121.

Here, the trial court did not document the methodology used to arrive at the $65,000 in damages award to Plaintiffs. On appeal, Plaintiffs attempt to recalculate the amount after the fact by drawing on scattered transcript excerpts of Welsh's trial testimony and their counsel's closing argument. But neither the parties nor this Court can determine the evidentiary soundness of the purported $5,300 per month in the 610 Property rental income, the estimated "quarter of [Plaintiffs'] property . . . not usable," or the relevant forty-nine months of negligent conduct "within the statute of limitations." That is the trial court's duty. The trial court did not document any findings of fact to support its conclusion of law concerning damages owed. Thus, the trial court erred in concluding that Defendant owed Plaintiff $65,000 in damages and we thus remand to determine "what amount, if any, [P]laintiff is entitled to recover from [D]efendant." *Mann Contractors*, 135 N.C. App. at 775, 268 S.E.2d at 121.

**D. Injunctive Relief**

Both Plaintiffs and Defendant challenge the trial court's permanent injunction. At this juncture, however, the parties' respective challenges to the injunction diverge. Plaintiffs accept the injunction but argue that the trial court erred by imposing a written payment plan that the parties must follow to settle the damages awarded to Plaintiffs. We agree with Plaintiffs that the trial court erred in

adding this unsolicited requirement to the injunction, as it lacks any apparent basis in the record or current law. Conversely, Defendant rejects the injunction entirely and contends that the trial court erred by issuing one so legally imprecise as to be unenforceable. For the reasons discussed below, we find that this constitutes error.

When a trial court fashions a permanent injunction, "[e]very order granting an injunction. . . shall set forth the reasons for its issuance; shall be in specific terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained." N.C. Gen. Stat. § 1A-1, Rule 65(d) (2023). We assess this reasonable-detail requirement by asking "whether the party enjoined can know from the language of the order itself, and without having to resort to other documents, *exactly what the court is ordering it to do.*" *Auto. Dealer Res., Inc. v. Occidental Life Ins. of N.C.*, 15 N.C. App. 634, 642, 190 S.E.2d 729, 734 (1972).

The imposed injunction at least partially fails this test because neither Defendant nor this Court cannot, without resorting to other documents, determine what the trial court reasonably means by a "necessary" action. *Id.* The two intended results of "preventing [the] tenants from trespassing upon and damaging" the 600 Property are clear enough given Defendant's negligence. Even so, we cannot discern with any reasonable certainty what actions the trial court considers to be "necessary" to achieve them. The trial court does outline in its findings and conclusions what actions by Defendant amounted to negligence, such as failing to act after receiving "notice that its tenants' vehicles . . . were encroaching on" the 600 Property. But it

- 19 -

does not attempt to tie this documentation to its injunctive command in any reasonable or fair way for Defendant. Accordingly, we hold that the injunction is not specific enough to comply with statutory requirements and remand for further consideration. N.C. Gen. Stat. § 1A-1, Rule 65(d).

## IV. Conclusion

For the reasons above, we hold that the trial court did not err in: (1) concluding that Plaintiffs failed to adduce sufficient evidence to hold Defendant liable for trespass; (2) concluding that Plaintiffs failed to adduce sufficient evidence to hold Defendant liable for nuisance; (3) fashioning injunctive relief applicable to their actual injuries; and (4) reaching Findings Nos. 6, 10, 12, 14, 15, 17, and 19. However, we hold that the trial court erred in: (1) concluding that Defendant owed plaintiff $65,000 in damages without documenting further findings of fact; and (2) issuing an injunction too legally imprecise for Defendant to obey.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges ZACHARY and WOOD concur.